David Gauntlett, for My Choice. I'd like to reserve three minutes and one time. Your Honor, I have three points to make. First, contrary to Travelers' representations, no other court has applied an analogous AIPD enforcement to bar coverage for affirmative claims brought rather than liability claims against the policyholder. Second, Trusted Tech made no intellectual property infringement or violation claims against My Choice or MUN. And third, the AIPD did not bar a defense to MUN, who did not sue Trusted Tech for any claim, much less one for an intellectual property violation. To the first point, it's important to note that in arguing to the district courts, Travelers misstated the actual language of the AIPD endorsement, which we address in the briefing. The actual language states, any other personal injury or advertising injury alleged in any claim or suit that also alleges any such infringement or violation. In that context, the word alleged must be understood as alleged against the insured. Risks are insured against. Only claims of a claimant can create a claim or suit to which the insurance applies. It is also key to note that because the court believed that the decisions it had looked to had applied it to affirmative claims relief, it didn't focus on the fact that the definition of this suit, as used in the policy, had been restated by Travelers to focus on a suit in the view of Travelers, including an action by My Choice against Trusted Tech. If you look at the actual language of the policy, you spend some time at page 13 of 37 in the reply addressing the actual language of the use of the term suit in the insuring agreement, the condition section, and the suit itself definition. And all of them address an alleged suit against an insured as the context in which they find that the term suit properly applies. So in the insuring agreement, it states, you have no duty to defend the insured against any suit seeking damages for personal and advertising injury to which the insurance does not apply. Conditions, a claim is made or suit is brought against any insured. Suit, a civil proceeding in which damages because of personal and advertising injury to which this insurance applies are alleged. And of course, the law is very clear that policy exclusions are strictly construed against the insurer. And interpreting the AIP-EE endorsement, press only claims against an insured is a permissible reading of that contract that avoids creating any inconsistencies in the California Civil Code Section 1652. Indeed, the decision from this court, Burlington Insurance Code, the Minotaur, the Holdings Inc. at 690, Fed APPX 918 at 922, makes that very point in a very analogous circumstance that supports the construction of the policy that we advance. Also, another decision of this court, Lexington Insurance Code, is one where the AIP-EE doesn't meet that standard of explaining for reduction or diminution in coverage purportedly affected by this errant clause is. Also critical, Allstate Insurance Code v. 5, this public decision of this court, 55 F Second 660 at 663. And the court there dealt with a endorsement which had fragmentary statements and found that it didn't highlight the effect of the alleged change. Ultimately, then, the case doesn't meet the Kenan v. Truck Insurance Exchange 31 Cal Fort 635 at 648 requirement that an insurer cannot escape its basic duty to insure by means of an exclusionary clause that is unclear. As to the next point, there is simply no cause of action for any form of intellectual property violation. To the extent that the traveler seeks to argue that some reference to proprietary information suffices, I direct the court to a very recent decision that co-stated briefing from the district court involving Cisco Systems v. William Chung, 2020 U.S. District 92497. And at Aster 42, the court goes and talks about difficulty of pleading a trade secret misappropriation claim, which requires great particularity and specificity. This court were to find that the errant reference to proprietary information in the counterclaim suffices to deem that a trade secret misappropriation lawsuit, as it was so labeled and had all elements to meet that requirement, would turn on its head the jurisprudence about the difficulty of pleading a trade secret case, which the Cisco case alludes to. It also talks about the statutory elements at Aster 43 to 44, that decision. And at 76 to 77, after finding that it met every single requirement, going on for pages and pages and said, I'm here remanding because there's still more that's wanted than needed. As to the last point, Munn, as an individual, simply was not suing anyone. And he has rights based on the severability doctrine to a defense benefit himself, no matter what rights attend to the corporate entity. Notably, the court will see, and call attention to, my brief that the Minkler, M-I-N-K-L-E-R-V, Safeco case, 49 California 315 at 324 to 325, 2010, dealt with the severability clause that when read in conjunction with an infusion, it created an ambiguity where an insured would reasonably expect coverage separate for the independent acts and omissions. And quite frankly, it just doesn't pass muster for the severability opinion, an aspect to be ignored. Because under FIBUS from this court, a policy must reasonably be interpreted to provide separate coverage for a consortium claim in addition to another insured bodily injury claim. Where, as here in a mandatory and dealt endorsement, did not conspicuously notify FIBUS of the reduction in coverage. It's that failure to notify of the conspicuous reduction in coverage that is extremely problematic. They don't tell you what you've lost, what's been taken away. If this strange language was held to be enforceable, there would be nothing to stop insurers from arguing that if they have a sentence that says, any claim affirmatively brought by an insured bars coverage. Then this would provide an opportunity for that redrafting exercise. And suddenly, any pursuit of affirmative relief would fall by the wayside and would vitiate any coverage. Thereby handicapping an insured who defensively needed to assert either an underlying claim or a counterclaim of some kind. And in effect, making the insurer the owner of the rights to the recovery that was an issue rather than the properly being orchestrated between the parties. If you look carefully at the actual language of the exclusion, you'll see that the addition of the words by my insured against the very much cobbled together. CNA, which also defended this case, didn't have that against another element. It agreed to defend. And indeed, it did find its place against travelers to us viewing its position as quite. Other is a decision. By the ticket master, also of this courts talking about facts that ensures broader construction based on or rising. Fences are cost paid or charged. The insured is not the only reasonable one. Our construction offers a reasonable construction of the policy. And thus can be accepted. And to the extent that there's any question as to whether the claims asserted against mine could constitute a claim for intellectual property, that gives rise to a factual dispute. And in the actual dispute context, that creates a defense. At 972 ALI, GNA tech, Inc. The federal insurance code, 673. Second, 957, 972. As the court has not posed any questions, I'd like to save the rest of my time for rebuttal. Your honors, may it please the court. I'm Bruce Celebrezze for the appellee travelers, casualty insurance company of America. This court should affirm the decision of the district court, which granted summary judgment to travelers because actual property exclusion preclude any duty to defend either my choice or Mr. Mung in the underlying lawsuit, because the underlying lawsuit involved intellectual property claims, the intellectual property exclusion. I'll say great length is clear. There are many entry that have been language. There are cases where the brought by the insurer. Your honor, there is one case that I'll be happy to talk about, but I also think, and we discussed this in our brief and I would like to discuss with your honors here. The claims that were brought against the insured, the trusted tech versus my choice cross complaint did contain intellectual property claims. In addition to, of course, my choice is affirmative claims. That's not a position that your client recognized. No, it is not, but it has been fully briefed. If I can address that point, your honor, the California Supreme court has addressed the very point driving at, at the moment travelers initially, as your honor indicated, was tendered. The cross complaint, the trusted tech versus my choice cross complaint. It did agree to accept the tender under a full resolution. The reservation of rights, property exclusion in specifically to in the future. The, uh, what happened next was that, uh, my choice who had been the original plaintiff filed an amended complaint in the same suit. It had a cause of action for misappropriation of trade secrets and travelers withdrew from the defense at that time. Uh, the time of any other basis for denying. No, your honor, there wasn't. And that makes no difference whatsoever. Legally travelers cannot be punished or penalized. By accepting a tender of defense that it did not need to accept California in the Scottsdale versus MV transportation case in 2005 dealt with this exact issue. In that case, it was a similar case to this trade secrets underlying case, Scottsdale, the insurer accepted the tender of its insured MV transportation. It filed a declaratory judgment action. So stating that it, even though it accepted the tender, it's not believe it was necessary to do so. After the Supreme court, which agreed that in hindsight, I still never owed a duty to defend in the first place. And in fact, Scottsdale was therefore entitled to recover. I'm seeking to recover. Indicated other insurers were involved. It makes no sense to sue for them, but the California Supreme court specifically says, if you make a mistake and defend a case that you don't need to, you can get your money back. The court can look in hindsight and make that determination. So I hear what you say. This is more familiar with the counsel for the policy. And yet it, but you're not trying to actually had to respond to that because your honor is suggesting some sort of a waiver as opposed to an error. I mean, isn't apply the exclusionary claims made what the policy says. No matter who brings what it says, your honor is if claim or suit actually, how is the layman supposed to say it's agreement. I don't think claim there because, because the insurance company has certain obligations for claims that have not arisen into suits, but suit that claim does not apply in this instance where clearly my choice, vital lawsuit against trusted tech, its competitor and trusted tech filed a cross complaint back against it. Clearly that is one suit. There's no doubt that when the, my choice first amendment complaint was filed, asserting a misappropriation of trade secrets claim that this exclusion would be triggered. But I do need to point out to your honors that it really was triggered earlier. The fact that travelers did not rely on that is recognize that at any time. An insurance company makes a mistake. It has to provide coverage, which the contract does not. What I'm saying is that the potentially speaks to how understandable the language did not understand or did not interpret its own policy in a given fashion. I'm not sure why anybody else should be required to read it in a way. The insurance company itself didn't figure out I'm talking about something very different. And it seems to me if the insurance company can't figure out that the language that surely suggests to me that the language is at least ambiguous ambiguous. If it was crystal clear, the insurance company would have figured that out from the first instance and it didn't. Your honor respectfully, I think your honor is sort of making my point that the exclusion applies without regard to who has brought the intellectual property claim. I think that may be ambiguous for a different reason. I'm not trying to argue on that argument that the insurance companies delay response or delayed interpretation is meaningful because I don't see a delay on the part of the insurance company in that argument. I'm speaking of the other argument you started to make. When it comes to the claim or the proof language, I think the argument for ambiguity can't depend upon what the insurance company did, but it can be made based on why an insurer should expect this language to apply not to a claim against the insurer, a claim brought by the insured against somebody else. I guess we'll just have to disagree respectfully. That's a problem for you, isn't it? Because that it would be triggered by an affirmative claim brought by the insured against somebody else. Your honor, there is one case that is in our brief, although we, we don't discuss it in detail, but I think I should spend a moment on it. It's called W A W D G doing business as foresight sports against Sentinel insurance. It's from the Southern district of California. So it's a district court case, but I think it establishes the point that I'm trying to make and that travelers has made in that case, the underlying suit was started by a company called max out versus done. Neither of which were policy max out sued done for patent infringement third party complaint against the insured foresight, but not for an intellectual property violation direct for a breach of warranty of non-infringement and others seeking indemnity under the commercial code. And in that case, the court found that even though that third party complaint, there was no allegations against foresight, the insured for breaching or for violating an intellectual property claim because that third party complaint was brought in the same suit as the plaintiff case, the intellectual property, patent infringement case that the exclusion would clearly apply relying on molecular and cases that we cite in our brief. I think that the language, what your honor is suggesting is that suit cannot mean suit. The suit must mean what Mr. Gauntlet says is suit against the insured, but the, but the rules of construction, change your language slightly must. The question is, it could spell be spelled out explicitly. I did encounter one case where a policy spelled it out. That's not what we have in front of us here. I previously looked at the WAW, but all the cases I looked at, not pose this issue of claims brought against the insured. And I can understand that way. I really have more difficulty understanding. A claim brought by the insured, seeking coverage. Cancel. I am a basic kind of logical conceptual problem with this because exclusions referred to things that would otherwise be covered. For the fact there's a specific narrow exclusion in the policy. Is that your understanding? Yes. And that's exactly the scenario here, your honor. No, because if the insured alleged misappropriation of trade secrets against another party, which language, because the coverage language is about defending the insured against. So it could not come within the scope of an exclusion. If I may, your honor, I completely agree with your honor that if the scenario had been, my choice is trusted tech, then travelers never would have even heard about it. Right. Because you're not insuring for that. So how could it fall within logically? And this goes to the argument about the expectations of the insured and the policy. It goes against your whole section of the coverage language and the exclusion language and how all of that works. And the reason that it works here is because my choices versus trusted tech was just the beginning. Then trusted tech filed a cross complaint against my choice. That's what was tendered to travelers. Travelers was not asked initially to do anything. Travelers was asked to defend the cross complaint. Right. And it would have fault. There were claims in that cross complaint for a defamation and disparagement, which are personal injury and advertising injury offenses, which means that, but for the exclusion I bet when the first amendment complaint was filed by my choice, it was provided by Mr. Gauntlet to travelers arguing that travelers should pay for the cost of prosecuting that counterclaim. This is in the record, the declaration of Ms. Sauter. I'm in 66 and two 67 of the record stating or should pay for the prosecution of that complaint because it was quote conducted against liability. In other words, it was defensive in nature that if I could, before my time runs out, I do need to direct your honors to the cross complaint itself in paragraphs 18, 63, 70 and eight record trusted tech. It does not assert a cause of action against my choice for misappropriated trade secrets. That's true. And it doesn't need to. The California Supreme court has said many times, the court is to look at the facts alleged, not the causes of action, but they allege it's stealing or theft of or invasion of these software keys, pricing lists, confidential data, proprietary data, all of which are intellectual property. And your honors are to affirm district court if they got the right result, not necessarily the right reason. And the right result here is that this exclusion says it applies to any suit that involves a personal injury or advertising injury claim. So we have defamation and disparagement in the same suit as both the allegations in the paragraphs I just mentioned in the cross complaint and in the first amendment complaint for misappropriation of trade secrets. Every single court that has addressed this language has found it to be unambiguous. And they don't say it's only unambiguous in X fact pattern or Y fact pattern more than dozen cases around the country find it to be unambiguous. Actually your honor, we think very clear and we would ask you to affirm. Thank you. Yes, it's important to remember that ambiguity is textual. It depends on the facts before the court and you can find ambiguity in the context of a facts, even though other courts facing different facts have not done so. W a W G D case. I urge you to read it, your honor, because I think the court needs to explain why it's a questionable logic to the extent anyone seeks to cite it for the proposition that traveler does here. It's a property damage case. It doesn't involve personal and advertising injury. It cites the decisions, other Sentinels decisions. It deals with Hartford's much broader exclusionary language and the portion of the opinion that is being cited by travelers is clear. Dicta MV transportation, affirmatively by the California Supreme court in the Hartford v. Swift decision in 2014 goes on at length to talk about the breadth of the duty to defend, which was its focus, not any prosecution. It talks about its facts in the complaint and inferences, all those kinds of elements. Suit means suit limited to a suit against the insured contextually based on those provisions of the policy that I alluded to. There was no suggestion in travelers arguments that the policy language itself buttress its definition of suit. It's simply has no construction that is supported in that way. The button case we reference explains why claim is there. There's a claim can create a settlement duty, even absent a suit, but since 2001 in the foster Gardner decision, the carrier will be the first to run around and say, where's the suit that is filed against the insured? We don't see it. That would be their view. The counter claim, fact allegations on proprietary information was because they didn't seek any particular damage remedy or established a seat to establish liability based on that reference. So I have a practical question. So Bracey made the point that for paying the cost of prosecuting your action. And in fact, my choice didn't ask it to pay the cost for prosecuting the initial action that it filed. It just filed a claim when, especially tech filed its counter claims and, and as for the defense costs as a practical matter, my choice counter claim, travelers to pay the cost of prosecuting that counter claim. Are these things all divided out? It's a very distinct issue. Look at the 1997 arrow jet case from the California Supreme court. And it explained the concept that some fees that are not defensive or at requiring a defense can be defensive in character where they're conducted against liability for strategic purposes. And it may well be that the litigation of the complaint, which was the con first of the allegations for disparagement and defamation was the most effective way to place into controversy the entitlement of the insureds to have liability. And the fact that their case settled after a police raid of trusted tech suggests that they may have been onto something. And that case, the arrow jet case may provide a pathway to get recovery, but that will not be because there was any duty related to the defense activity, but because the defense of the counter claim was buttressed by supported by, and is in a, in an accord with the logic of the arrow jet case and its progeny would be permit that pursuit. And there's a bunch of, I just just wrote an article. It's a good offense. Is that what you're saying? There you go. Your honor. And that's a practical consideration for practical jurists. I believe my time is up your honor. All right. Thank you. Counsel my trace software versus travelers, casualty insurance will be submitted and this session of the court. Thank you. Your honor. Thank you. This corporate, this session stands adjourned.
judges: Wardlaw, Clifton, Hillman